15463

GALLMAN v. SPRINGS MILLS *ET AL.*

(22 S. E. (2d), 715)

*Messrs. McDonald, Macauley & McDonald,* of Chester, counsel for appellant,

*Messrs. Hemphill & Hemphill,* of Chester, appeared as counsel for respondent.

November 10, 1942.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE BAKER.

This is an appeal from an order of the Circuit Court affirming an award of the South Carolina Industrial Commission under the terms and provisions of the Workmen's Compensation Act of this State.

The facts are undisputed. The parties to this case are bound by the said' Act. The respondent is employed by Springs Mills. The plant of the employer consists of a large tract of land near the city limits of Chester, S. C. On said tract of land is situate a large manufacturing plant or cotton mill, surrounded by warehouses and other appurtenances, and all around over said premises are situate numerous dwelling houses rented by the employer to its employees only, and all of the streets and sidewalks in the mill area and between the cotton mill building and a public highway, which does not lead up to the mill, are privately owned and privately maintained by the employer. On the morning of January 25, 1940, respondent (employee) was awakened as usual by the 4:30 a. m. siren. He arose, dressed for work, ate his morning meal and remained in the dwelling which he occupied in the "Mill Village" until the sounding of the 5:45 a. m. siren which was intended to notify him and other employees working on the same shift that it was time to start for work. Upon the sounding of the 5:45 a. m. siren, the respondent, dressed in his work clothes and carrying the tools needed and used by him as a weaver in the mill, left his dwelling and proceeded to walk upon and along one of the streets provided by Springs Mills towards the cotton mill, his place of employment. After he had travelled approximately three-fourths of the distance between his residence and the cotton mill and was within a short distance thereof, he slipped and fell at a slick place on the ice on the

sidewalk portion of the street and sustained injuries, including a badly broken arm, necessitating loss of time from work, medical treatment and other expenses.

The sole issue is: Did respondent's injury arise "out of and in the course of the employment?"

The question presented has not heretofore come before this Court. Our guides therefore must be the language of the statute, the principle of liberal construction of the statute to which this Court has repeatedly committed itself, and the general rules of statutory construction that control in applying the language of the Act.

However much we might sympathize with the respondent, and regardless of what we may think the law should be in a case of the present character, it is not within our power to translate this sympathy and conviction into law. That is a strictly legislative function.

We recognize the tendency of appellate Courts to adopt a very liberal view of what constitutes an accident arising "out of" and "in the course of" the employment in dealing with questions of the present character. All textbook writers and the decisions of the various state Courts are in accord with the general rule that in determining whether an accident arose out of and in the course of the employment, each case must be decided with reference to its own attendant circumstances; and that the question whether injuries sustained by an employee in going to, or returning from, his work are compensable, is governed by the circumstances and facts of the particular case. Therefore, it is useless to attempt to generalize from the decided cases, none of which, as far as we have been able to find, deal with the precise situation here before the Court. There is an abundance of cases holding compensable injuries to emp'oyees sustained in going to and returning from work, but the controlling consideration was that in actual fact the employee, at the time of the accident, was engaged in the performance of some duty for his or her employer, or

was proceeding from one part of the plant to another, or was in the act of entering or leaving the place of employment.

The cases of *Covington v. Atlantic C. L. R. Co.*, 158 S. C., 194, 155 S. E., 438, and *Ward v. Ocean Forest Club, Inc.*, 188 S. C., 233, 198 S. E., 385, have such distinguishing features as to be of no value in determining the issue here involved; and come within an exception to the general rule.

In the first-mentioned case, it was necessary, in order to reach his place of employment (a tower on the side of the track), for Covington to ride or drive a railroad velocipede upon and over the tracks of the railroad company across Pee Dee River and the river swamp, a distance of approximately two and one-quarter miles, and he was provided with this velocipede by the railroad company. While returning from his work on this velocipede, Covington was injured. The Court held that under the circumstances of that case Covington was still engaged in the discharge of the duties of his employment. One of the authorities cited for such holding was *Bountiful Brick Co. v. Giles*, 276 U. S., 154, 48 S. Ct., 221, 222, 72 L. Ed., 507, 66 A. L. R., 1402, and from which case broad and liberal language was quoted, but it must be borne in mind that such broad and liberal language was used in connection with the facts of that case. There the employees of the brick company approaching the brick yard from the east had to cross railway tracks (the doing of which is always attended by danger) adjacent thereto in order to reach their place of employment, and in so doing Giles was struck by a train and killed. The controlling reason for the holding that Giles' death arose out of or in the course of his employment was stated by the Court as follows: "Since the only way of access to its brick-yard from the east was across the railway tracks, the company necessarily contemplated the crossing of them by its employees. No definite line of travel being indicated by the company or followed by the employees, who, with the com-

pany's full knowledge and acquiescence, habitually crossed wherever they saw fit, it results that, however the crossing was made, the risk thereby incurred was reasonably incidental to the employment and became annexed as an implied term thereof."

Attention is called to the fact that the Utah Workmen's Compensation Act, Rev. St. Utah 1933, 42-1-43, provides compensation for personal injury or death of an employee by accident "arising out of *or* in the course of his employment." And to the further fact that the question for determination by the United States Supreme Court was whether the Utah Workmen's Compensation Act and amendments thereto, which provides compensation for personal injury or death of an employee by accident "arising out of or in the course of his emp'oyment" as it was construed and applied to the facts by the Court below, contravenes the due process of law clause of the 14th Amendment.

In *Ward v. Ocean Forest Club, Inc.*, transportation was furnished to the employee from her home to the club, and from the club to her home as a part of the contract of employment, and it was while being transported under the contract that the employee was injured. Therefore, her injury arose out of and in the course of her employment.

It is a recognized rule that where an employee, by reason of his employment, is exposed to perils peculiar to public streets, an injury sustained while using a street or highway is compensable, where the nature of his work requires that some part thereof or connected therewith, be there performed. Thus the "doctrine of street accident cases" had its conception and birth.

The opinion in the case of *Favorite v. Kalamazoo State Hospital*, 238 Mich., 565, 214 N. W., 229, permitting an employee, a nurse, to recover compensation was partially based upon the doctrine of street accident cases, and that this employee was in effect on continuous duty, being subject to call at any time, in addition to her regular hours of

work, and was required to live in the "Nurses' Home" located on the hospital grounds. The facts of the *Favorite case* are brief and are as follows: Plaintiff was employed in the defendant hospital as a nurse; she and the other nurses lived in a dwelling on the hospital grounds, called the "Nurses' Home," located about 20 rods from the building in which she worked; a concrete sidewalk led from one of these buildings to the other; plaintiff's regular hours of work were from 8 in the morning until 8 at night, but she was subject to be called in an emergency at any time, and she could not absent herself from the grounds of the home without permission after 10:30 at night; on the evening of the day above stated, plaintiff left the place of her employment about 8 o'clock to go to the home; in passing along said walk she slipped and fell on the icy surface thereof, and sustained quite severe injuries.

As a general rule, an employee going to or coming from the place where his work is to be performed is not engaged in performing any service growing out of and incidental to his employment, and therefore an injury suffered by accident at such time does not arise out of and in the course of his employment. There are two universally recognized exceptions to this rule, and a third which is recognized by the Courts of some states. These exceptions are: (1) Where in going to and returning from work, the means of transportation is provided by the employer, or the time thus consumed is paid for or included in the wages. (2) Where the employee, on his way to or from his work, is still charged with some duty or task in connection with his employment. (3) Where the way used is the sole and exclusive way of ingress and egress, or where the way of ingress and egress is constructed and maintained by the employer.

We are in accord that the first two exceptions to the general rule are sound propositions of law, supported by reason, and in fact the first exception mentioned was the deciding factor in both the *Covington* and

*Ward cases* hereinabove referred to. But we cannot bring ourselves to the conclusion that an employee merely by using a "Mill Village" street in going to or returning from his work is at such time in the course of his employment, even though such street is the exclusive way of ingress and egress to the premises where he is employed and it is provided and maintained by the employer, unless there be some inherent danger in the use of such exclusive street or way.

A case somewhat analogous to the one under discussion is *Edwards v. Industrial Commission of Utah et al.,* 87 Utah 127, 48 P. (2d), 459, 460. It was admitted in that case that the plaintiff was a regular employee; that he was on the employer's property at the time the accident happened; that he had just finished his night repast at the tent of his sister in a tent colony provided by the employer for his employees; that he was on his way to work, and that he intended to pick up his tools as he passed his own tent; and that while on his way to work he was injured. The Court in holding that the injury was not compensable, stated: "Plaintiff first makes the contention that since the accident happened on the company's property while the plaintiff was on his way to work, the accident is compensable. The rule is not as broad as that. As stated in *Wheeler's case,* 131 Me., 91, 159 A., 331, the test is not so much as to whether the employer owns or controls the place where the injury occurred, but rather, whether it happens on the premises where the work is to be performed. Ordinarily where an employee is present at the place of work, even though he has not started work but is there to begin work or is there on the premises on his way to perform his duties, the accident is compensable. This is on the theory that the course of his employment must start somewhere. When he arrives at the place of work, even though he has not started his work, the course of his employment begins. On the other hand, it is a general rule that no compensation is recoverable by an employee who is injured while off the premises on his way

to or from his work. See Schneider on Workmen's Compensation (2d Ed.), § 263, page 745.  *   *   *"

In some states the statute specifically provides that the provisions thereof shall apply to accidents which occur when the employee is proceeding to or leaving his employment, but no such provision is contained in the South Carolina statute, which may well be significant in view of the fact that this State has only in recent years adopted a Workmen's Compensation Act, 39 St. at Large, page 1231 *et seq.*

In the present case we must reach our decision by determining whether, under the facts presented, the accident arose out of and in the course of employment of the respondent, and after careful consideration of the authorities to which we have been cited, and others which we have examined, it is our opinion that the respondent has not made out a case within the language of the Act.

The employment of the respondent had relation to the operation of machinery in the mill, and no duty was required of him on the streets traversing the property of his employer. His compensation was fixed by the time he spent or the amount of work he did in the plant performing the tasks which he was employed to do. The time he spent in going to the mill and in returning to his home would have no part in the amount of that compensation.

We do not consider it at all controlling that the respondent, on the occasion in question, was proceeding from his home to the mill to begin a day's work. In the course of this trip the respondent was in no sense under the control of his employer. He could have changed his mind about entering the mill at the appointed time, or in the process of proceeding toward the mill he could have visited with other persons living in the neighborhood, or transacted business, without in any way impinging on his obligation to his employer.

Nor does it appear to us to be material that the street on which the respondent was travelling constituted the private property of the employer. Whatever view Springs Mill may have expressed on the subject, the fact is that the street was a part of the residence area in which numbers of its employees lived. To the extent of the implied invitation to the public to enter upon such street for any lawful purpose, such as calling upon the mill employees resident in the neighborhood, delivering packages, soliciting business or transacting any other character of business or pursuing any other character of social relationships, the street was for all practical purposes a public street, or at least a street dedicated to public use so long as it bordered the residences of the mill employees. In this light the hazards to which the respondent subjected himself when he entered upon the street are the same hazards to which all members of the public who went upon the street subjected themselves. Those hazards were in no sense connected with the employment of the respondent, nor could an accident occurring thereon be said to arise out of and in the course of the respondent's employment.

A contrary view of the matter leads to results that could not have been in the legislative contemplation. In the present case the respondent at the time of the accident was within a comparatively short distance of the building to which he was proceeding. If the distance had been somewhat longer, and he had used an automobile or other vehicle, and in consequence of negligence on his own or somebody else's part was injured, certainly it would be deemed clear that the accident arose out of the negligence in question, rather than the employment, and in principle there is no difference between such a case and the present case, or between the present case and a case in which the employee lives many miles from his place of employment, and is injured in the course of his trip to the mill while using a bus or other type of public vehicle, or a private conveyance.

Of course our view of the matter does not deal with the question of the liability of Springs Mills for negligence in failing to maintain the street in question in a safe condition for the use of its employees and others. Upon a proper showing of negligence, whether the injured person was proceeding to work in the mill or was using the street for any other lawful purpose, Springs Mills would be liable in damages, but that liability would not arise under the Workmen's Compensation Law, which contains its own limitations of liability.

In view of the absence of any legislative expression applicable to the facts of the present case, it is pertinent to consider also the contractual foundation of the asserted liability of the insurer. The policies issued by the appellant Liberty Mutual Insurance Company are founded upon the statute, and the premiums charged therefor take into account only such risks as may be reasonably thought to be within the legislative contemplation. It would appear to be stretching the language of the statute and the contemplation of the parties to the insurance by the carrier, to attribute to the employment of the respondent an accident caused by a state of facts that arose when the course of employment had not begun, and in which the facilities of Springs Mills in conducting the employment were not directly involved.

As already stated, little aid is obtained from the decisions of the appellate Courts of the other states, because of the variances in the facts and in the language of the applicable statutes, but among the decisions which tend to support the foregoing views are: *Carper v. Workmen's Compensation Com'r,* 121 W. Va., 1, 1 S. E. (2d), 165; *California Casualty Indemnity Exchange v. Industrial Accident Commission,* 190 Cal., 433, 213 P., 257, and *Smith v. City of Gastonia,* 216 N. C., 517, 5 S. E. (2d), 540.

The question presented by this case is one for legislative consideration. We do not think that it comes within the scope of the law as at present worded.

The judgment appealed from is reversed.

MR. CHIEF JUSTICE BONHAM, MESSRS. ASSOCIATE JUS-TICES FISHBURNE and STUKES, and CIRCUIT JUDGE E. H. HENDERSON, ACTING ASSOCIATE JUSTICE, concur.