15692

EARGLE v. SOUTH CAROLINA ELECTRIC & GAS CO. *ET AL.*
(32 S. E. (2d), 240)

424

*Mr. Henry H. Edens,* of Columbia, S. C., Counsel for Appellant,

*Messrs. Wise & Whaley,* of Columbia, S. C., Counsel for Respondents,

November 17, 1944.

Mr. Associate Justice Fishburne delivered the unanimous opinion of the Court:

This is an appeal from a judgment of the Circuit Court reversing an award of the South Carolina Industrial Commission under the provisions of the Workmen's Compensation Act, Code 1942, § 7035-1 *et seq.* The hearing commissioner found that the deceased, Joe M. Eargle, met his death by "accident arising out of and in the course of his employment," and the appellant was accordingly allowed compensation for the death of her husband. On appeal the full commission affirmed this award.

There is no substantial disagreement with reference to the facts of the case. The deceased was employed by the South Carolina Electric & Gas Company as a pump room operator, at its steam plant located at Parr, on the North shore of Broad River. His home was on the South side of the river, less than a mile from the dam which impounded the waters forming a lake for the generation of electricity. The steam plant supplemented the supply of electricity generated by the water power. The lake was a half mile in width at the dam and five miles in length; the dam extended from the South side of Broad River across to the plant at Parr. Eargle lived nearer to the dam than to the town of Peak, located about two miles below the dam. At the town of Peak, a railroad trestle crossed from the South to the North side of the river.

Approximately one hundred persons living on the South side of the river worked at the defendant's plant at Parr. Fifteen or twenty of these employees, including the deceased, walked over the dam—which was much the shortest and

most direct route—to reach their work; the remainder, living nearer the town of Peak, used the railroad trestle to cross the river, and thence either rode or walked a distance of three miles from the North side of the river to the plant. Both of these routes were recognized by the company as ways of ingress and egress to and from the plant.

When water flowed over the dam, the employees customarily used the route by way of the town of Peak, and walked the trestle, with the exception of the deceased, who with a fellow worker usually crossed the lake in a boat, unless the wind and the water were too high, in which event they walked the trestle.

The gas company was in control of and had supervision over the lake and its shores, the dam, and the water rights below the dam. Following the disastrous attack by the Japanese on Pearl Harbor, on December 7, 1941, the Company stationed guards at both ends of the dam as a protection against possible sabotage, and issued to the employees living on the South side of the river a pass which authorized the guard to allow them to use the dam to reach their work at the plant. An order was also issued prohibiting the use of the dam as a walkway when water was running over it.

The plant was located 300 to 500 yards from the Northern end of the dam.

On Christmas Eve—December 24, 1941—the deceased was given special instructions to report for work the next day at the steam plant at eight o'clock A. M., as a member of an emergency shift, due to an unusual situation at the plant. He left his home about 7:20 o'clock in the morning, but upon reaching the dam found water running over it, which rendered it impassable. A dense fog hung over the lake and the river. Rather than take the long circuitous route by way of Peak and the railroad trestle, the deceased endeavored to cross the lake alone in his boat in order to reach his place of work. He failed to report for work that

day, and after search his body and the boat were found below the dam that afternoon.

The record shows that Eargle and his co-employee had crossed over the lake in the boat the preceding morning with safety, although water was then flowing over it. The foreman of the plant testified that he knew that Eargle went back and forth across the river in a boat, at times. But no instructions were given to employees as to what route they should follow in reaching the plant, and the foreman testified that he had no objection to the deceased's crossing the lake in a boat. The superintendent of the plant testified that the way across the railroad trestle was attended by danger, and that on the morning Eargle met his death the visibility on the North shore of the river was only about fifty or seventy-five feet; and that this condition added to the risk of walking the railroad trestle.

An abundance of judicial expressions, too numerous to be included in an opinion, have been suggested in explanation of the words "arising out of and in the course of" the employment. The phraseology of the several statutes in the various states differs but little; the general purport is the same. Simple, however, as these terms appear, they have filled volumes with discussion. No Court or Commission can with certainty do more than decide whether a particular case upon particular facts is or is not within the meaning of the quoted phrase.

Under our statute, which is similar to others, in order to entitle a workman to an award of compensation under the Workmen's Compensation Act, his injuries must result from an accident arising out of and in the course of his employment. *Gallman v. Springs Mills,* 201 S. C., 257, 22 S. E. (2d), 715; *Thompson v. J. A. Jones Const. Co.,* 199 S. C., 304, 19 S. E. (2d), 226; and see *Covington v. Atlantic Coast Line R. Co.,* 158 S. C., 194, 155 S. E., 438; *Ward v. Ocean Forest Club,* 188

S. C., 233, 198 S. E., 385. The two elements must co-exist. They must be concurrent and simultaneous. One without the other will not sustain an award; yet the two are so entwined that they are usually considered together in the reported cases; and a discussion of one of them involves the other. In none of the cases cited has the Court had before it the precise question now presented.

As is generally held, the words "arising out of" refer to the origin of the cause of the accident, while the words "in the course of employment," have reference to the time, place and circumstances under which the accident occurs.

Speaking to the subject *In Re Employer's Liability Assurance Corporation,* 215 Mass., 497, 102 N. E., 697, L. R. A., 1916A, 306, the Supreme Judicial Court of Massachusetts says: "It (the injury) arises 'out of' the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk con-

nected with the employment, and to have flowed from that source as a rational consequence."

In *Covington v. Atlantic Coast Line R. Co., supra* [158 S. C., 194, 155 S. E., 441], we quoted with approval from *Bountiful Brick Co. v. Giles*, 276 U. S., 154, 48 S. Ct., 221, 222, 72 L. Ed., 507, 66 A. L. R., 1402:

"And employment includes not only the actual doing of the work, but a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done. If the employee be injured while passing, with the express or implied consent of the employer, to and from his work by a way over the employer's premises, or over those of another in such proximity and relation as to be in practical effect a part of the employer's premises, the injury is one arising out of and in the course of the employment as much as though it had happened while the employee was engaged in his work at the place of its performance. In other words, the employment may begin in point of time before the work is entered upon and in point of space before the place where the work is to be done is reached."

In *Gallman v. Springs Mills, supra,* the Court referred to the general rule that an employee going to or coming from the place where his work is to be performed, is not engaged in performing any service growing out of and incidental to his employment; and, therefore, an injury suffered by accident at such time does not arise out of and in the course of his employment. In that case, we recognized the following exceptions to the foregoing general rule: (1) Where, in going to and returning from work, the means of transportation is provided by the employer, or the time that is consumed is paid for or included in the wages; (2) where the employee, on his way to or from his work, is still charged with some duty or task in connection with his employment.

The decision in the *Gallman case,* however,. turned upon a third exception to the general rule, which is recognized and approved by the Courts of many states. It is thus expressed in the *Gallman case* (201 S. C., 257, 22 S. E. (2d), 718) : "Where the way used is the sole and exclusive way of ingress and egress, or where the way of ingress and egress is constructed and maintained by the employer." And the qualification was added to it that an injury would not be compensable unless there be some inherent danger in the use of such exclusive street or way.

We think, under the peculiar and unusual facts of this case, that the following principle should also be made applicable : That an injury incurred by a workman in the course of his travel to his place of work and not on the premises of his employer, but in close proximity thereto, is not compensable unless the place of injury was brought within the scope of employment by an express or implied requirement in the contract of employment of its use by the servant in going to and coming from his work. This statement of the law is supported by the cases of *De Constantin v. Public Service Commission,* 75 W. Va., 32, 83 S. E., 88, L. R. A., 1916A, 329, and *Canoy v. State Compensation Commission,* 113 W. Va., 914, 170 S. E., 184.

If we apply these rules to the facts in this case, we have this situation : It is clearly evident that with the plant of the gas company situated on the North shore of Broad River and the homes of more than 100 employees located on the South side, it was contemplated that these employees would certainly have to cross the river in order to reach the company's plant. The two routes sanctioned by the company— that is, across the long railroad trestle or over the dam— were not free from inherent dangers. The dam was subject to overflow, at which times it was impracticable to cross it; and the workmen using the railroad trestle were normally

subjected to a definite risk of being killed or injured by railroad trains.

On the morning Eargle met his death, fog enshrouded the lake and the river. The dam was impassable because the impounded waters were flowing over it. The normal danger of using the railroad trestle located at Peak, about two miles from the dam, was intensified by the fog which affected the visibility; and deceased attempted to cross the lake, as he had often done, in his boat.

It should be borne in mind that the statute does not confine the injuries which it embraces to those arising out of and in the course of the employment during regular working hours; but, by its very terms, embraces all injuries by accident arising out of and in the course of the employment. Of course, for an accident to arise out of the employment, the injury of the employee must be reasonably incidental to his employment. He must not unnecessarily increase the risk of injury to himself beyond that contemplated in his contract of employment. The fact that the accident happens upon a public road or street, as in the *Gallman case, supra,* and that the danger is one to which the general public is likewise exposed, is not conclusive against the existence of a causal relationship, if the danger be one to which the employee, by reason of and in connection with his employment, is subjected peculiarly or to an abnormal degree. *Cudahy Packing Co. v. Parramore,* 263 U. S., 418, 44 S. Ct., 153, 68 L. Ed., 366, 30 A. L. R., 532.

Here, the location of the plant was at a place so situated as to make the two customary ways of immediate ingress impracticable on the morning of the accident. In any real and practical sense, can it be said that Eargle unnecessarily increased the risk of injury to himself by using his boat, beyond that contemplated in his contract of employment, or by an implied requirement in the contract

of employment? We do not think so. The danger he incurred was not that of an ordinary member of the public, or a risk common to the neighborhood, but was the subjection of the employee to that danger by the conditions of his employment.

Of course, we are not concerned here with the question of negligence or contributory negligence. Eargle had been especially directed, as he was leaving the plant the afternoon before, to report for duty on his regular shift because of an emergency at the plant. In order to comply with this direction and reach his place of work, it was necessary for him to cross Broad River, and he doubtless adopted what appeared to him to be the only reasonably feasible way—under the prevailing weather conditions—of doing so. That because there was inherent danger in crossing the river in a boat under the circumstances which confronted him, should not bar compensation to appellant.

For the reasons hereinabove stated, we think the judgment of the Circuit Court must be reversed, and the order of the South Carolina Industrial Commission sustained.

Judgment reversed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES STUKES, TAYLOR, and OXNER concur.