15693

BAILEY v. SANTEE RIVER HARDWOOD CO. *ET AL.*
(32 S. E. (2d), 365)

434

*Mr. George W. Keels,* of Florence, S. C., Counsel for Appellant,

*Messrs. Royall & Wright,* of Florence, S. C., Counsel for Respondents,

December 5, 1944.

· MR. ASSOCIATE JUSTICE STUKES· delivered the unanimous Opinion of the Court:

This appeal is from the judgment of the Court of Common Pleas for Florence County reversing awards of the Industrial Commission which were made on account of the accidental death of James Bailey and injuries to Tom Eaddy. Thus there are two cases, in which the governing facts are the same, and this judgment will dispose of both.

.Bailey and Eaddy were employees of the respondent, Santee River Hardwood Company, whose workmen's compensation insurance carrier the other respondent is. These employees lived near Turbeville and their place of employment was at the Hardwood Company's logging camp on the Pee Dee River, about eleven miles from the city of Florence. In the same neighborhood there lived another employee, Tom Rose. The latter had a personally owned automobile and was in the habit of transporting Bailey and Eaddy to the camp on Sunday afternoons, after week-ends at their respective homes. But his car became disabled and on Sunday, October 10, 1943, Rose went by bus to Florence, where the superintendent of the Hardwood Company lived, and reported to him his inability to take Bailey and Eaddy to the camp and the reason for it. There is controversy whether their conversation resulted in the loan by the superintendent, Mr. Russell, of the company's truck to Rose so that the latter could carry out his obligation to Bailey and Eaddy, or, as an act of the company, Russell told or ordered Rose to take the truck and with it carry the employees to their place of work. However, Rose did take the truck and after filling it with the company's gasoline in accord with Russell's direction, returned to Turbeville and called for Bailey and Eaddy at their homes and started with them, and another employee, to the camp and in the town of Olanta, on their route, had a collision with another vehicle, whereby Bailey was killed and Eaddy injured.

A part of Rose's regular employment was to use this truck to go to St. Stephens every Sunday afternoon or night (after he had delivered Bailey and Eaddy to the work camp), spend the night and early next morning take to work certain employees who lived there. For this he was paid by the company for an eight-hour work-day. But his prior arrangement with Bailey and Eaddy had been personal and they ordinarily paid him $1.50 each for the round-trip transportation in his privately owned automobile. Sometimes though, when he went through Florence on the trip to the camp on Sunday afternoon he would get the company's truck there at the home of Mr. Russell and take Bailey and Eaddy on to camp in it, on which occasions he would reduce his charge to them by 25 cents per trip.

On the fateful occasion involved, Rose suggested to Mr. Russell that he take Bailey and Eaddy in the company truck with him to St. Stephens and then take them to work early next morning with the St. Stephens employees, which latter transportation was his unquestioned duty to the company in accord with his employment, as has been stated. But Mr. Russell demurred because there was no place there for Bailey and Eaddy to sleep, and he required Rose to first take them to the logging camp where the company maintained living quarters for the employees, and then take his usual trip in the truck to St. Stephens. This entailed the use of a different route and Rose would not have gone by Olanta at all had his suggestion been followed, as is seen by reference to the official map of the State highways established by law. The employees concerned paid neither Rose nor the company for the transportation undertaken to be furnished and there is no evidence that Rose was paid any additional sum by the company for the extra service involved.

The contest upon the compensation claims arose when respondents denied that the accident arose out of and in the course of the employment of Bailey and Eaddy. 1942 Code,

Sec. 7035-2(f). However, the Hearing Commissioner found upon the facts stated that the accident did so arise, and, upon review, the Commission affirmed the findings and adopted the awards and opinion of the single Commissioner. Upon appeal to the Circuit Court this was reversed upon the ground urged by the present respondents and it was specifically held, as a controlling fact, that the employer did not *furnish* the transportation but that it resulted from a loan of the company truck by Superintendent Russell to Rose, and it was argued before us that such loan was for the purpose of enabling Rose to carry out his personal obligation to Bailey and Eaddy to provide them transportation back to their work at the logging camp.

An established fact, not heretofore adverted to, is that Bailey was the fireman of the log-loading machine which required him to start work earlier than the others of the logging crew and it was essential to the operations of the company that he be on hand in time. But the employees were upon an hourly basis of compensation and Bailey's and Eaddy's "time" began Monday morning. The latter, we think, is unimportant under the circumstances of these cases. The employees were certainly on their way to work and in a conveyance provided in one way or another by the employer, and the Commission has found upon relevant and competent evidence that it was such a way as to draw the protection of the compensation law about the employees during their travel.

Contradiction is found by the respondents' counsel in the testimony of Rose as to the nature and details of his transaction with Mr. Russell which resulted in his use of the company's truck and gasoline for the purpose of the transportation of the employees to work. He said on direct examination that he told Mr. Russell that his car was broken down and Bailey and Eaddy had no way to get to camp, whereupon Mr. Russell told him to use the

company's truck and go and get them. "I asked could I go and carry them all around to St. Stephens and he told me no, to bring them back here (the logging camp) and then go to St. Stephens." But on cross examination, in answer to leading questions, he testified that he *asked* Mr. Russell if he could use the company truck for this purpose and, in effect, that he consented. If this were self-contradiction, it was within the exclusive sphere of the Industrial Commission to find in fact, not that of the Court. *Cokeley v. Lee* (and cases there cited), 197 S. C., 157, 14 S. E. (2d), 889. Moreover, there was a justifiable inference from the undisputed fact that when Russell provided for the company its truck and fuel, he was acting in behalf of it and not merely in friendship and generosity to Rose. In his testimony, however, he characterized the transaction as a loan of the truck to Rose; he offered no explanation of the use of the company's gasoline.

It appears from the stated testimony that it is easily inferable that the employees were on this occasion furnished transportation to work by the company. About the only difference between them and the St. Shephens employees is that the latter were so provided by an established and long-standing arrangement, whereas this was the first time the Turbeville employees were furnished such transportation. And there is no dispute that had the St. Stephens employees suffered the same accident, they would have been within the compensation law. How then, can its protection be consistently denied claimants? What difference does it make that the accident occurred on the first occasion of their transportation by the employer rather than on the second or any subsequent occasion? Were they on that account any the less in the course of their employment? We think not.

There are two patent reasons which require reversal of the judgment of the Circuit Court—there was substantial evidence upon which the Commission's finding was based and it was a mixed one of law and fact (*Pate v. Plymouth Mfg. Co.,* 198 S. C., 159, 17 S. E. (2d), 146), and, secondly, this Court is committed to a liberal construction of the Compensation Act to include injured workmen within its protection, rather than exclude them. In substantiation of the latter postulate see *Ham v. Mullins Lumber Co.,* 193 S. C., 66, 7 S. E. (2d), 712, and *Yeomans v. Anheuser-Busch,* 198 S. C., 65, 15 S. E. (2d), 833, 136 A. L. R., 894.

As to the first stated reason, it is settled that facts found by the Commission are binding upon the Courts if there is any substantial evidence to support such findings. 1942 Code, Sec. 7035-63. South Carolina decisions in 34 S. E. Digest, Workmen's Compensation, 1939, 1943 pocket part, p. 294 *et seq.*

The conclusion reached is supported by pertinent pronouncements in the former decisions of this Court. In the opinion in *Ward v. Ocean Forest Club,* 188 S. C., 233, 198 S. E., 385, 387, it was said: "Appellant has cited numerous cases from other jurisdictions holding that in going to and returning from the place of employment, if it is a part of the contract that the employee be furnished by the employer transportation or the means of transportation to and from work, the employment continues during the transportation. * * *"

And the following is from *Gallman v. Springs Mills,* 201 S. C., 257, 22 S. E. (2d), 715, 717, which literally answers the problem presented by this appeal: "As a general rule, an employee going to or coming from the place where his work is to be performed is not engaged in performing any service growing out of and incidental to his employment, and therefore an injury suffered by acci-

dent at such time does not arise out of and in the course of his employment. There are two universally recognized exceptions to this rule, and a third which is recognized by the courts of some states. These exceptions are: (1) *Where in going to and returning from work, the means of transportation is provided by the employer,* or the time thus consumed is paid for or included in the wages. (2) Where the employee, on his way to or from his work, is still charged with some duty or task in connection with his employment. (3) Where the way used is the sole and exclusive way of ingress and egress, or where the way of ingress and egress is constructed and maintained by the employer.

"We are in accord that the first two exceptions to the general rule are sound propositions of law, supported by reason. * * *" (Emphasis added.)

Possibly a more liberal application of the governing principle was necessary for the decision of our recent case of *Eargle v. South Carolina Electric & Gas Co.*, 205 S. C., ..., 32 S. E. (2d), 240, than is needed to reverse the instant judgment. The comprehensive discussion there of the meaning of the phrase " 'arising out of and in the course of' the employment," as applied to a workman on his way to work, need not be repeated here. However, we do say again, as was said there: "No Court or Commission can with certainty do more than decide whether a particular case upon particular facts is or is not within the meaning of the quoted phrase."

Its truth is demonstrated by reference to the many conflicting cases collected in the annotation of the subject in 145 A. L. R., 1033, and the several preceding annotations there cited.

The following is from the recent text, Horovitz on Workmen's Compensation (1944), p. 162: "The narrow rule that a worker is not in the course of his employment until he crosses the employment threshold is itself subject to many

exceptions. Off-premise injuries to or from work, in both liberal and narrow states, are compensable (1) if the employee is on the way to or from work in a vehicle owned or supplied by the employer * * *."

For the reasons indicated the judgment is reversed and the awards of the Industrial Commission reinstated.

Messrs. Associate Justices Fishburne, Taylor and Oxner concur.

Mr. Chief Justice Baker not participating.