16852

CRAWLEY v. T. G. GRIGGS TRUCKING CO. *ET AL.*
(81 S. E. (2d) 41)

*Messrs. Haynsworth & Haynsworth,* of Greenville, *for Appellant,*

*Messrs. J. P. Mozingo, III,* of Darlington, and *Williams & Henry,* of Greenville, *for Respondents,* ▮

March 30, 1954.

STUKES, Justice.

The Hearing Commissioner awarded workmen's compensation to the dependents of R. L. Crawley, deceased employee, which upon review, was affirmed by the Industrial Commission, two members dissenting, and upon appeal the award was affirmed by the Court of Common Pleas. From the order of the latter the employer and its insurance carrier have appealed to this Court.

Crawley had been employed for a year as a truck driver by the Trucking Company appellant before sentence of thirty days to the county chain gang upon a criminal charge which was prosecuted by his wife. He was indebted to his employer for cash advanced and it promised him re-employment upon his release from imprisonment. At the expiration of his sentence and upon his request the company's local manager called for him at the chain gang and took him to the Greenville terminal of the company at about five o'clock on the afternoon of October 13, 1950. Crawley asked for his re-employment and the manager said that he would have to communicate with the home office of the employer at the town of Ruby, which he did by telephone and obtained the necessary authority; but meanwhile Crawley had left the terminal. The manager planned for Crawley to drive an empty truck to Landrum, about twenty miles distant, to leave at about seven o'clock next morning in order to be at Landrum around eight and get a load of veneer and take it to

Ruby. He left the terminal at about 7:30 P. M. and, not having seen Crawley, instructed the foreman to get word to him of his employment and assignment, which the foreman tried to do through another employee. The fact of it was known to those who were at the terminal. The foreman closed and locked the terminal for the night at about nine o'clock.

Another employee of the company testified that Crawley left the terminal in his own automobile about 5:30 in the afternoon and was next seen by this witness around 8:30 when the latter was going home from work at the terminal. Upon Crawley's offer to take him home, the witness got in his automobile and found in it a woman who was lying on the seat with her face hidden; Crawley appeared to be drinking. At the request of the witness, he was put out before reaching his home, to walk the rest of the distance. He detected that the upholstery in the front seat of the automobile was afire. Together he and Crawley removed some of the upholstery and thought they had extinguished the fire.

An employee of a nearby drive-in restaurant, who was a friend of Crawley, testified that the latter ate with him on the evening before his death and loafed intermittently about the drive-in, and was drinking, until it was closed at 12:30 A. M., after which the witness rode with Crawley in his automobile about the city until about 3:30 A. M. The witness said that at about 11:30 Crawley received a telephone call at the drive-in from the dispatcher of the trucking company, calling from its place, which the witness overheard at an extension of the telephone, and Crawley was instructed to report for work at four o'clock on the next morning. The witness contradicted himself in his testimony relating to the telephone call. He said that he did not know the dispatcher by name, but did by sight, and did not know who called; but at another point in his testimony he said that he recognized the dispatcher's voice. The "dispatcher" was not identified and no other witness referred to him or was even asked about him (the testimony is printed in full in

question and answer form) although the terminal manager, the warehouse foreman, the traffic representative and another employee of the trucking company testified.

The commissioner (affirmed by the commission) did not make a finding of fact in accord with the foregoing testimony, which might have been binding upon the court. Instead is the following from his "Statement of the case": "There may have been some misunderstanding as to the time when Crawley was to start on the trip but it is clear from the testimony, in my opinion, that he reported to the warehouse as an employee of the Carrier in order to make the trip and, according to the company's own witnesses, it would have been satisfactory for him to have left at 4:00 o'clock if he wanted to do so." The evidence does not support the last of the quoted conclusion, which must therefore be rejected.

On routine inspection two police officers discovered a burning automobile, with motor running, at the truck terminal at 4:54 A. M. on October 14, and that a man, who turned out to be Crawley, was prone on the back seat of his closed car. They called for help to extinguish the fire, summoned the terminal manager of the company who identified Crawley, who was dead with third-degree burns of his face and arms and second degree burns of the front of his body, according to the autopsy findings. One of the officers surmised in testimony that the deceased lay in his closed car, with the motor running to keep himself warm in the chill of the October night.

Ordinarily the terminal would not have opened until about eight A. M. but a truck was left outside for Crawley to make the scheduled trip to Landrum, and thence to Ruby, and the manager and foreman of the company testified that Crawley may have left as early as he desired although he was not expected to do so until about seven o'clock in order to reach nearby Landrum at about eight. He was paid by the hour and his wages would have begun at seven.

The appeal from the award of compensation is upon the ground that the death of the employee did not arise out of and in the course of his employment, which must be sustained and the judgment reversed.

Of our former decisions respondents rely upon *Owens v. Ocean Forest Club,* 196 S. C. 97, 12 S. E. (2d) 839; *Eargle v. South Carolina Electric & Gas Co.,* 205 S. C. 423, 32 S. E. (2d) 240; and *Mack v. Branch No. 12, Post Exchange,* 207 S. C. 258, 35 S. E. (2d) 838.

In the *Owens case* it was held in effect, that an employee who is injured at a time and place when and where his employment may have required him to be, is presumed to have been injured in the course of, and as a consequence of, his employment. That case involved the death by gunshot wounds of a game warden which occurred during his work hours and on the premises he was guarding, which statement demonstrates its inapplicability to the facts of the case in hand. If the latter warranted the stated presumption, which they do not, it would be at once rebutted by them; the cause of the death here is quite clear enough to dissociate it from the employment. The *Eargle case* was also one of death of the employee on premises under the control of the employer as he attempted to reach his job by the hazardous route and means permitted by the employer, which resulted in his drowning. The *Mack case* is perhaps the nearest in facts to this, but not close, at that. There the injured employee was in the building of the employer and apparently securing the tools of his work within a few minutes of the time it should begin, when he (or another employee) accidently set his clothing afire. The facts of that case, like the others cited, are not comparable to this.

Consideration of the evidence in the instant case is conclusive that there was none of substance that the employee was required or expected at the premises of the employer before about seven o'clock in the morning, when his hourly wage would begin. He went there at some time before five

o'clock and, for aught in the evidence, remained in his parked automobile until he was burned to death hours before his scheduled work period would have commenced. It cannot be reasonably said that he was engaged in anything which was incidental to his employment at the time of the happening of the tragedy. It is inferable from the record that he had no home in Greenville to which to go on the fatal night. Shortly after he was sent to the chain gang his wife gave up their family home in Greenville, took the children and went to the home of his parents in Ruby. The unfortunate deceased simply undertook to spend the night in his automobile, and the last of it on the employer's premises where he parked. So far as his work was concerned, he might as well have parked on the street or wherever else he may have found a place, and the connection of the parking with his employment would have been no more and no less. The evidence and the reasonable inferences from it are clearly insufficient to establish any causal relation between the employment and the death; nor may it fairly be said that decedent's activities which resulted in his death were incidental to the employment. Referring to the requirement of the law that a compensable accident is one "arising out of and in the course of" the employment, it was said in the *Eargle case* [205 S. C. 423, 32 S. E. (2d) 242.] : "No Court or Commission can with certainty do more than decide whether a particular case upon particular facts is or is not within the meaning of the quoted phrase." And so we do here, we think without inconsistency.

Reversed.

BAKER, C. J., and TAYLOR and OXNER, JJ., concur.

J. ROBERT MARTIN, JR., Acting Associate Justice, disqualified.