17522

Harry BALDWIN, Respondent, v. PEPSI-COLA BOTTLING COM-
PANY and Indemnity Insurance Company of North America,
Appellants

(108 S. E. (2d) 409)

*Messrs. Turner, Padget & Graham,* of Columbia, *for Appellants,*

*Messrs. McLeod & Singletary,* of Columbia, *for Respondent,*

*Messrs. Turner, Padget & Graham,* of Columbia, *for Appellants, in Reply,*

April 8, 1959.

STUKES, Chief Justice.

This is an appeal from a judgment which affirmed an award by the Industrial Commission of workmen's compensation to respondent.

He was a helper upon a truck of his employer, the appellant Bottling Company, and worked under the supervision of the driver of the truck. It was loaded with crates of bottled drinks at the Columbia plant of appellant which it transported to branch warehouses of the Company at Camden, Newberry and Batesburg. It was the duty of respondent to report early on the morning of the accident at the Columbia plant and assist with the loading of the truck, then ride it to the Camden branch warehouse, assist in unloading the drinks and reloading the truck with crates of empty bottles to be returned to Columbia.

On Monday morning November 11, 1957, he overslept and did not get to the plant to help load the truck. His personal car being out of repair, his brother started to take him to the plant and en route, about two city blocks from the plant, they met the loaded truck on its way to Camden. There was mutual recognition and the driver of the truck stopped it on its right of the street and respondent's brother stopped his car about opposite the truck, so that respondent could go to it. As he attempted to cross the street he was struck by another vehicle and seriously injured. On a previ-

ous occasion the driver of the truck had similarly met respondent as he was on his way, late, to work, as on this occasion, and had stopped for him to board the truck.

The commission awarded compensation on the ground, *inter alia,* that the stopping of the truck on the street for respondent to board it was an implied order or invitation of the employer's representative for him to do so which brought respondent within the ambit of his employment, thus differentiating the case from those which have denied compensation for injuries received going to or from work. Among many other authorities reliance was had upon *Eargle v. S. C. Electric & Gas Co.,* 205 S. C. 423, 32 S. E. (2d) 240, *Ward v. Ocean Forest Club,* 188 S. C. 233, 198 S. E. 385, and *Bailey v. Santee River Hardwood Co.,* 205 S. C. 433, 32 S. E. (2d) 365.

Upon appeal the lower court affirmed the award and the employer and its insurance carrier have appealed upon the contention that the claim presents an instance of injury incurred while going to work and is not compensable, citing our cases of *Gallman v. Spring Mills,* 201 S. C. 257, 22 S. E. (2d) 715; *Dicks v. Brooklyn Cooperage Co.,* 208 S. C. 139, 37 S. E. (2d) 286; *Hinton v. North Georgia Warehouse Corp.,* 211 S. C. 370, 45 S. E. (2d) 591; *McDonald v. E. I. DuPont De Nemours & Co.,* 223 S. C. 217, 74 S. E. (2d) 918; *Troutman v. Williams Furniture Corp..* 224 S. C. 353, 79 S. E. (2d) 374; and *Sylvan v. Sylvan Brothers, Inc.,* 225 S. C. 429, 82 S. E. (2d) 794.

There are well-recognized exceptions to the "going to and from work" rule which are exemplified by the following decisions: *Ward v. Ocean Forest Club, supra,* 188 S. C. 233, 198 S. E. 385; *Eargle v. S. C. Elec. & Gas Co., supra,* 205 S. C. 423, 32 S. E. (2d) 240; *Bailey v. Santee River Hardwood Co., supra,* 205 S. C. 433, 32 S. E. (2d) 365; and *Lamb v. Pacolet Mfg. Co.,* 210 S. C. 490, 43 S. E. (2d) 353. See 7 S. C. Law Quarterly 206.

Upon consideration of the authorities and the peculiar facts of this case we are constrained to agree with the com-

mission and the circuit court that the award should be affirmed. Respondent was simply going to work, and within the exclusionary rule, until his car was stopped opposite the truck of the employer, upon which respondent worked. When the truck, driven by his superior, was stopped for him to board it, it was an implied direction of the employer to him to cross the street and do so; he was no longer the master of his movements. The crossing of the street thereby became incidental to the employment and injury there incurred was in the course of his employment and arose out of it. The street became, for the time being, a part of respondent's work environment; he was not a mere member of the public, traveling upon it. This conclusion is supported by the result of *Eargle v. S. C. Gas & Elec. Co., supra,* 205 S. C. 423, 32 S. E. (2d) 240, 244, and particularly by the following excerpt from the opinion:

"It should be borne in mind that the statute does not confine the injuries which it embraces to those arising out of and in the course of the employment during regular work hours; but, by its very terms, embraces all injuries by accident arising out of and in the course of the emploment. * * * Eargle had been especially directed * * * to report for duty on his regular shift because of an emergency at the plant. In order to comply with this direction and reach his place of work, it was necessary for him to cross Broad River, and he doubtless adopted what appeared to him to be the only reasonably feasible way * * * of doing so."

The analogy of the quotation to the facts of the instant case is manifest. Respondent was directed to board the employer's waiting truck for which it was necessary for him to cross the street and in his effort to do so he was injured by accident.

There is another view of the facts which leads to ▇▇ affirmance of the award. One of the exceptions to the exclusionary going to and from work rule is where the employer furnishes the transportation. Here the

employer furnished the transportation from its Columbia plant to its Camden warehouse and it was respondent's duty to ride the truck. He was approaching it to board it when injured which may fairly, under many authorities, be considered to be a part of the employer-provided transportation.

In *Flanagan v. Webster & Webster,* 1928, 107 Conn. 502, 142 A. 201, 204, the claimant was furnished transportation to work. Upon the day of his injury he did not wait for the employer's vehicle but walked ahead to meet it because the weather was cold; and the vehicle stopped on the road opposite claimant, just as here, and he was struck by another car as he attempted to cross the road to board the employer's vehicle. The injury was held to be compensable upon the ground that the stopping of the employer's vehicle was an invitation to board it and equivalent to an order by the employer to do so. The court said: "From the moment at least when the truck stopped and plaintiff began his attempt to cross the highway to board it, if not before, his employment began."

Award was affirmed in *Ward v. Cardillo,* 1943, 77 U. S. App. D. C. 343, 135 F. (2d) 260, where transportation to work was furnished by the employer and claimant was injured when he attempted to cross the road to the waiting truck of the employer. Award was likewise affirmed in *Povia Bros. Farms v. Velez,* Fla. 1954, 74 So. (2d) 103, which was upon similar facts as the *Flanagan* and *Ward cases.* Of like result was *Scott v. Willis,* 1928, 150 Va. 260, 142 S. E. 400, 401, where claimant was injured by another vehicle in the highway just after he alighted from the employer's truck which had transported him home after work. The court said: "The injury was so close in time and space as to be an incident of the transportation, and hence that it arose out of and in the course of his employment. If there be any fair doubt about this, we resolve it in favor of the claimant."

There are authorities in some conflict with the foregoing. See review of them, pro and con, in *Larson's Workmen's Comp. Law,* Sec. 17.40.

There is a distinction between this case and the *Gallman case, supra,* 201 S. C. 257, 22 S. E. (2d) 715, heavily relied upon by appellants. Gallman could have walked in any direction he wanted: he was the master of his own movements; here in contrast, respondent was under the employer's implied order to cross the street to its waiting truck and board it for the performance of the duties of his employment. The *Hinton case, supra,* 211 S. C. 370, 45 S. E. (2d) 591, is similarly distinguishable.

Of influence in the decision of this close case, and properly so, is the general rule, alluded to in the *Virginia case, supra,* which this court follows, that doubts are to be resolved in favor of compensability. *Ham v. Mullins Lumber Co.,* 193 S. C. 66, 7 S. E. (2d) 712; *Yeomans v. Anheuser-Busch,* 198 S. C. 65, 15 S. E. (2d) 833, 136 A. L. R. 894; *Bailey v. Santee River Hardwood Co., supra,* 205 S. C. 433, 32 S. E. (2d) 365. Many other decisions of like tenor may be found in 9 S. C. Dig. 486, 7, Workmen's Comp., Secs 51, 52. In *Portee v. S. C. St. Hosp., S. C.,* 106 S. E. (2d) 670, 674, the following was quoted from a recent New York case: "Where it has been possible to do so, without violence to either logic or the language of the statute, there has been an evoluntionary process of liberalism in decisions affecting injured worker to meet the beneficient purpose of the Act." *Burns v. Merritt Engineering Co.,* 302 N. Y. 131, 96 N. E. (2d) 739.

This case was exceptionally well argued and the excellent briefs have been most helpful to the court.

Affirmed.

TAYLOR, OXNER and MOSS, JJ., concur.

LEGGE, J., dissents.

LEGGE, Justice (dissenting).

The leading opinion, in my judgment, represents a dangerous departure from the rule laid down by this court in *Gallman v. Springs Mills,* 201 S. C. 257, 22 S. E. (2d) 715

and *Eargle v. South Carolina Electric & Gas Co.,* 205 S. C. 423, 32 S. E. (2d) 240, which, until now, has been consistently adhered to. That rule is, in substance, that an accidental injury sustained by an employee while going to or coming from the place where his work is to be performed is not compensable unless: (1) the employer, as part of the contract of employment, provides the means of transportation for the employee to go to or come from his work, or pays for the employee's time thus consumed, (2) the employee, on his way to or from his work, is charged with some duty or task in connection with his employment; (3) the way used is inherently dangerous and is either (a) the exclusive way of ingress and egress to and from his work, or (b) constructed and maintained by the employer; or (4) such injury occurred at a place, in close proximity to the premises of the employer, the use of which place by the employee is expressly or impliedly required by the contract of employment.

I cannot escape the conclusion that this case comes squarely within this rule. It is readily distinguishable from *Ward v. Cardillo,* 77 U. S. App. D. C. 343, 135 F. (2d) 260, *Provia Bros. Farms v. Velez,* Fla., 74 So. (2d) 103, *Flanagan v. Webster & Webster,* 107 Conn. 502, 142 A. 201, and *Scott v. Willis,* 150 Va. 260, 142 S. E. 400, for in each of them the employer was under duty, as part of the contract of employment, to transport the employee to and from work. They are thus within the first exception to the "going and coming" rule before mentioned. The contract of employment in the instant case contained no such provision.

Nor can I agree with the suggestion that recovery should be permitted under authority of *Eargle v. South Carolina Electric & Gas Co., supra.* There was no emergency in the instant case, nor any express or implied requirement in Baldwin's contract of employment that necessitated his walking across U. S. Highway No. 1 to board the truck. No such contractual arrangement is reasonably inferable from

the fact that on one or two previous occasions the truck driver had stopped and picked him up.

I am not greatly impressed by the theory of "implied order" or "invitation"; at most it was an "implied order" or "invitation" to *come to work* where the truck had stopped. In obeying or accepting it Baldwin was simply going to his place of work. Between the point where the truck stopped and the point where the automobile in which he was riding stopped, U. S. Highway No. 1 is intersected by Chestnut Street. The truck stopped on one side of the intersection, in the driveway of a grocery store; the automobile on the other side of the intersection, in the driveway of a laundry. By attempting to walk across the four traffic lanes of the highway, Baldwin chose a way that was inherently and obviously dangerous; but it was neither a way "constructed and maintained by his employer", nor the "exclusive way" by which he could have reached the truck. The common hazard to which he was exposed in walking across the highway was not one "arising out of and in the course of" his employment.

Suppose that Baldwin, having overslept, had walked from his home to the sidewalk across the street from the entrance to his employer's premises and had been struck by an automobile while crossing that street. Surely his injury would not have been compensable under the rule in this state. Would this case have been different if, in the situation thus supposed, the truck had been in the entrance, prepared to leave, or parked on the far side of the street from him? I should not think so, unless we are prepared to overrule *Hinton v. North Georgia Warehouse Corp.*, 211 S. C. 370, 45 S. E. (2d) 591.

Let us imagine this situation: Baldwin, having overslept, telephones to his employer, who tells him that the truck is about to leave on its route and that he will direct the driver to stop at the corner of X Street and Y Avenue and wait for him there. If Baldwin, walking to that rendezvous, arrives there before the truck and, while crossing X Street,

is accidentally injured, is such injury compensable? Suppose that the truck had arrived there first and was waiting for him. Suppose that his accident had occurred while he was crossing T Street, four blocks away. Or on the sidewalk in front of his home. Is the accidental injury to be considered as having arisen "out of and in the course of the employment" in any, or all, or none, of the cases just mentioned? Cf. *Brousseau v. Blackstone Mills,* 1957, 100 N. H. 493, 130 A. (2d) 543.

It is no answer to say that the instant case is to be considered under its own peculiar facts. To some extent all cases are so considered and decided. But in workmen's compensation perhaps more than in most branches of jurisprudence, because of the liberality with which the statute is and should be construed, it is essential that we not cast off from our moorings without considering how far we may drift. As Professor Larson puts it (Workmen's Compensation Law, Sec. 15.22) : "Before any court breaks down one wall it ought to be prepared to define where it proposes to erect the next wall." I am convinced that the rule laid down in our cases before mentioned is a sound and fair one; I fear that the decision in the instant case will seriously undermine it.