1324

Johnny R. BOOTH, Employee, Respondent v. MIDLAND TRANE HEATING AND AIR CONDITIONING, Employer, and Auto Insurance Company of Hartford, Appellants.

(379 S. E. (2d) 730)

Court of Appeals

*Kay G. Crowe* and *R. Lewis Johnson, Barnes, Alford, Stork & Johnson,* Columbia, *for appellants.*

*John Earl Duncan,* of *Rogers, Duncan, Fullwood & Derrick,* Lexington, *for respondent.*

Heard Feb. 14, 1989.

Decided April 10, 1989.

*Per Curiam:*

Midland Trane Heating and Air Conditioning (employer) and Auto Insurance Company of Hartford, its workers' compensation carrier, appeal from an order of the circuit court which reversed the Industrial Commission's determination of Johnny R. Booth's (claimant) average weekly wage for purposes of calculating his compensation rate for a covered injury and held his average weekly wage for such purpose is $262.02. We affirm.

## ISSUE

Does substantial evidence support the Commission's finding that no "exceptional reasons" existed which would make it unfair to calculate the claimant's "average weekly wages"

according to the ordinary definition of such wages in Section 42-1-40, Code of Laws of South Carolina (1976, as amended).

## FACTS

Claimant worked for the employer for over four years. On April 1, 1986, he suffered a back injury for which the employer admitted liability under the Workers' Compensation Act.

A dispute arose as to the claimant's "average weekly wage" for determining his compensation rate under the Act, and a hearing was held before Commissioner Crocker to determine the question. At the hearing, the employer's and carrier's attorney presented the following "wage history" for the claimant.

He was hired at three dollars and fifty cents ($3.50) an hour, promoted to three dollars and seventy-five cents ($3.75) an hour on March 15th of 1983, and he then was promoted to four dollars ($4.00) an hour on September 13th 1983. He went up to four dollars and twenty-five cents ($4.25) on January 17 of '84, to four dollars and fifty cents on August 21st of 1984, to four dollars and seventy-five cents ($4.75) on April 12th of '85, and then he went to six dollars and fifty cents ($6.50) on October 16th of '85 and to seven dollars ($7.00) on December 4th of '85.

The employer also submitted a Form 20 which the claimant conceded accurately reflected the days he worked and the wages he earned during the 52 weeks preceding his injury. The average weekly wage over that 52 week period was $191.94, yielding a compensation rate of $127.96.

The claimant argued that because he was earning substantially more per week when he was injured than he was earning for much of the preceding year due to the wage rate increases he received, exceptional circumstances existed entitling him to have his average weekly wage determined by a different method so as to "more nearly approximate the amount ... [he] would be earning were it not for the injury."

Commissioner Crocker found "no exceptional reasons" called for use of a method of calculation other than the normal method provided by Section 42-1-40 and concluded

the average weekly wage was $191.94 as contended by the employer. The Full Commission affirmed without discussion.

The circuit court reversed and ordered the claimant's average weekly wage is $262.02, based on his average earnings from January 1, 1986, to the date of injury, yielding a compensation rate of $174.68 per week.

## DISCUSSION

The primary purpose of the Workers' Compensation Act is to protect the worker. *Smith v. Fulmer,* 198 S. C. 91, 15 S. E. (2d) 681 (1941). It is remedial legislation which is entitled to a liberal construction in order to accomplish the ends and purposes for which is was enacted. *Flemon v. Dickert-Keowee, Inc.,* 259 S. C. 99, 190 S. E. (2d) 751 (1972). Any reasonable doubt as to its construction should be resolved in favor of its claimants. *Baldwin v. Pepsi-Cola Bottling Co.,* 234 S. C. 320, 108 S. E. (2d) 409 (1959).

Section 42-1-40, Code of Laws of South Carolina (1976, as amended), provides in pertinent part:

> "Average weekly wages" means the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of fifty-two weeks immediately preceding the date of the injury, ...
>
> \* \* \* \* \* \*
>
> When for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.

By the employer's own admission, from April 12, 1985, to December 4, 1985, the claimant's wages were increased three times from $4.50 to $7.00 per hour, the rate at which the claimant was being paid when he was injured in April of 1986. This is an increase of over 63 percent in less than 12 months. We hold as a matter of law that under the circum-

stances of this case a wage increase of this magnitude in such a short period of time is exceptional.[1]

As our Supreme Court has stated, "The objective of wage calculation is to arrive at a fair approximation of the claimant's probable future earning capacity. His disability reaches into the future, not the past; his loss as a result of injury must be thought of in terms of its impact on probable future earnings." *Bennett v. Gary Smith Builders*, 271 S. C. 94, 98-99, 245 S. E. (2d) 129, 131 (1978).

## CONCLUSION

We agree with claimant that he "should not be penalized in his compensation rate for performance meriting such increases so quickly," and that the Commission's refusal to apply an alternative method for its calculation as provided for by the statute under the circumstances of this case constituted an error of law.

The record is clear that from December 4, 1985, until he was injured on April 1, 1986, the claimant was paid $7.00 per hour. All parties agree that from January 1, 1986, to the date of injury he averaged $262.02 per week actual earnings.

We find no error in the appealed order. It is therefore affirmed.

Affirmed.

---

[1] Certainly Congress' recent proposal to raise its members' salaries by 50 percent was considered exceptional and excited much public comment.