Eva Jane Christian, Administrator of Estate of John
Franklin Christian, Deceased, Appellant, v. Chicago and Illinois Midland Railway Company,
Appellee.
Alice May Daugherty, Administrator of Estate of
Albert Nelborn Daugherty, Deceased, Appellant,
v. Chicago and Illinois Midland Railway Company,
Appellee.

Gen. No. 9,731.

Opinion filed March 7, 1951. Released for publication April 3, 1951.

HAROLD BROVERMAN and SCOTT HOOVER, both of Taylorville, for appellant.

PROVINE, PINKERTON & MILEY, of Taylorville, and CARL D. FORTH, of Springfield, for appellee.

MR. JUSTICE DADY delivered the opinion of the court.

Plaintiff appellant Eva Jane Christian, as administrator of the estate of John Franklin Christian, deceased, brought a personal injury suit in the circuit court of Christian county under the Wrongful Death Act [Ill. Rev. Stat. 1949, ch. 70, par. 1 *et seq.;* Jones Ill. Stats. Ann. 38.01 *et seq.*] against the defendant appellee Chicago & Illinois Midland Railway Company, a corporation, for injuries resulting from the death of decedent. Plaintiff appellant Alice May Daugherty, as administrator of the estate of Albert Nelborn Daugherty, deceased, brought a like suit in the same court.

By agreement the two cases were tried together as one case. In each case the jury returned a verdict for $15,000 in favor of the plaintiff. In each case, on motion of defendant, the trial court entered an order allowing judgment in favor of the defendant notwithstanding the verdict. This appeal from such orders respectively is taken by each plaintiff.

On November 20, 1948, the decedents were and for sometime prior thereto had been employed as coal miners at a coal mine of the Peabody Coal Company. About 3:15 p.m. on that day, after completing their day's work, while still on the mine property, decedents

entered the automobile of one Dyer, a fellow employee, with whom they had ridden many times in going to and from work and across the same crossing, to go to their homes in Pana, several miles distant, and in so doing were driven through the north gateway of the mine property. While the automobile was being so driven northerly across a railroad crossing over the defendant's right of way the automobile was struck by a freight engine of defendant and the decedents died as a result of the collision.

After the return of the verdicts the defendant, in each case, moved for judgment for the defendant notwithstanding the verdict on the ground that the Peabody Coal Company and the defendant were automatically subject to the provisions of the Workmen's Compensation Act [Ill. Rev. Stat. 1949, ch. 48, par. 138 *et seq.;* Jones Ill. Stats. Ann. 143.17 *et seq.*], and that plaintiff's intestate at the time of the collision was in the course of his employment, and therefore because · of the provisions of section 29 of the Workmen's Compensation Act the plaintiff did not have legal capacity to bring or maintain the suit. The trial court allowed each motion and entered judgment in each case for the defendant.

No question is raised as to the fact that the Peabody Coal Company and the defendant were both automatically subject to the Workmen's Compensation Act at the time of the collision. The plaintiffs do question the trial court's holding that the intestates were at the time of the collision also subject to the Act and that therefore these actions at law could not be maintained.

The mine property was used only by the coal company, and was completely enclosed on all sides with a high woven wire fence. There were only two gateways in the fence, one on the north side and one on the south side. Both gateways could be and sometimes were closed with gates. Just inside the north gateway

there was a gate watchman's shanty which had been there at all times since 1929.

Immediately north of the north fence was the 100-foot-wide railroad right of way of the defendant, extending east and west. Immediately north of the right of way was a public street known as Taylorville street, which ran in an easterly and westerly direction. From the south edge of Taylorville street a dirt or cinder roadway led southerly to the north gateway and in so doing crossed two railroad tracks of defendant. A highway commissioner "kept up" the roadway north of the north track. The defendant kept up the roadway across the tracks. The crossing was entirely on the railroad right of way, was about 14 feet wide and about 120 feet in length, and was the only crossing or roadway leading into the mine property from the north.

The northerly railroad track was the main line track, the center of which was about 59 feet north of the main gateway. The southerly track was a storage track, the north rail of which was 45 feet north of the main gate. Freight cars were usually stored on both sides of said roadway on the storage track, and were so stored on the day of the accident. To the south and east of the north gateway and on the mine property there was a parking area for employees' automobiles. Inside of the mine fence were four houses, occupied by officers of the coal company and their families. About 950 men were employed at the mine. About 90 per cent of them, including the decedents, usually and customarily entered and left the mine property through the north gate. The employees who lived in Jeiseyville, a small settlement south of the mine property, walked into and out of the mine property through the south gate. The coal company did not furnish or pay for transportation of its employees. In the record there is nothing tending to show that the coal company had any control over any part of the roadway across the tracks, and nothing

tending to show that the freight engine in question was at the time in question engaged in interstate commerce.

There was evidence to the effect that the roadway leading from the north gate to the public street was not a public road, that the general public was not permitted to use it, except on business with the mine, but that at election times politicians used it to get into the mine, that it was used by families living in the four houses on the mine property and their guests, and that at times some people drove through the north gate and out of the south gate to a lake owned by the coal company south of the south fence, but on the mine property, to attend social entertainments and political meetings. As to the character of such roadway, we consider it sufficient to say that it is our opinion and we find that the roadway in question was private property belonging to the defendant and that the general public had no right to use and did not use the railroad crossing in question.

The facts in this case material to the question of whether the accident arose out of and in the course of the employment are not in dispute. Therefore, such question is one of law. (*Board of Education v. Industrial Commission*, 392 Ill. 261.) One of the controlling factors in determining the question is whether the decedents at the time of the accident were within "the orbit, area, scope or sphere" of their employment. The fact that the employee in leaving the premises was following the usual and customary route is ordinarily considered of weight in deciding that the accident had taken place in the course of the employment. (*Wabash Ry. Co. v. Industrial Commission*, 294 Ill. 119.) The causative danger must be peculiar to the work and not common to the neighborhood. The criterion is not that other persons are exposed to the same danger, but rather that the employment renders the workmen peculiarly liable. If the injury can be seen to have fol-

lowed as a natural incident to the work and as a result of the exposure occasioned by the nature of the employment, then it arises out of the employment. The question is did the circumstances of the employment require the decedents to incur some special risk in using the roadway in question. (*Ceisel v. Industrial Commission,* 400 Ill. 574; *Payne & Dolan v. Industrial Commission,* 382 Ill. 177.)

In *Mueller Const. Co. v. Industrial Board,* 283 Ill. 148, an employee was struck by an automobile while crossing a public street to telephone for materials for use in remodeling a building on which he was at work for his employer. The court in holding that the injury arose out of and in the course of the employment said: "As a part of defendant in error's duties he was required to order materials as needed, and it may fairly be said, as an incident to such employment, that he would have occasion to use, and did use, a telephone. As none was provided he would go to some nearby place to use a telephone as occasion required. In going to and returning from such place we think he was as much in the course of his employment as he would have been in going to and returning from a telephone if one had been installed on the premises. In such case there can be no question but that had he been injured the injury would have occurred in the course of his employment."

In *Landon v. Industrial Commission,* 341 Ill. 51, the court said, "The cases which hold that an employee injured while going to or coming from his work is within the course of his employment have been cases decided upon the ground that the employment required a particular route to be traveled or the route followed was the only one open to the employee."

In *Schafer v. Industrial Commission,* 343 Ill. 573, Schafer and Olson, as building contractors, were constructing a barn on hospital grounds near a private

road which crossed a railroad. Arthur B. Trumble was one of their employees in such work. After finishing his day's work, as Trumble was riding in an automobile across the railroad on his way home the automobile was struck by a train and he was killed. The Supreme Court said: "The private road through these grounds afforded a vehicle the only way or means of access to the barn under construction from the public highway. The use of the private road for entrance and exit by automobiles at appropriate times was incidental to Trumble's employment. The arbitrator, the Industrial Commission and the circuit court were justified in finding that the accidental injury which resulted in Trumble's death arose out of and in the course of his employment."

██ In *Bountiful Brick Co. v. Giles,* 276 U. S. 154, 66 A. L. R. 1402, a Compensation Act case where the employee of a brick company was killed while crossing a railroad, the court said: "And employment includes not only the actual doing of the work, but a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done. If the employee be injured while passing, with the express or implied consent of the employer, to or from his work by a way over the employer's premises, or over those of another in such proximity and relation as to be in practical effect a part of the employer's premises, the injury is one arising out of and in the course of the employment as much as though it had happened while the employee was engaged in his work at the place of its performance. In other words, the employment may begin in point of time before the work is entered upon and in point of space before the place where the work is to be done is reached. Probably, as a general rule, employment may be said to begin when the employee reaches the entrance to the employer's premises where the work is to be done; but it is clear

that in some cases the rule extends to include adjacent premises used by the employee as a means of ingress and egress with the express or implied consent of the employer.''

It is our opinion and we find that the injuries which caused the deaths of the decedents arose out of and in the course of their employment, and that therefore the plaintiffs appellants cannot maintain these actions at law.

The judgment of the trial court in each of the cases appealed is affirmed.

*Affirmed.*