223 S.C. 217 (1953)
74 S.E.2d 918
McDONALD
v.
E.I. DuPONT De NEMOURS & CO. ET AL.
16724
Supreme Court of South Carolina.
March 4, 1953.
Messrs. Blatt & Fales, of Barnwell, for Appellant.
*218 Messrs. Thurmond, Lybrand & Simons, of Aiken, for Respondents.
The Order of Judge E.H. HENDERSON, requested to be reported, follows:
This is an appeal by the defendants from a decision and award of the South Carolina Industrial Commission.
There is only one exception which is as follows:
"That the Industrial Commission erred in affirming that portion of the opinion of the hearing Commissioner reading as follows: `It is found to be a fact that A.J. McDonald was an employe of E.I. du Pont on July 5, 1951, and that on this date he sustained accidental injuries arising out of, and in the course of, his employment', the error being that such injuries did not arise out of and in the course of such employment."
The words "arising out of and in the course of employment" have given rise to many decisions by the courts and much discussion by the text writers. It happens that in almost every case decisions of some of the courts throughout the nation may be cited on either side. So in this case we are fortunate in having applicable decisions of our own Supreme Court to guide us to a proper solution of the contest.
The claimant was employed at the bomb area in Barnwell County. He had finished his work for the day, and at the time of the accident had gone some distance off the premises of his employer. His work lay within a section known as the "400 area", but he had checked out at what is described as the clock alley when his work terminated at 4:30 in the afternoon. This was on the east side of the highway, a public highway known as South Carolina State Highway No. *219 50. He had gone from the gate about three hundred yards, and attempted to cross the highway, in order to go to his automobile, which had been parked about a mile from the clock alley gate, on the side of a dirt road. He was not in the performance of any duty to his employer; he was master of his own time and could go and come as he pleased. No duty was required of him by his employer outside the "400 area" or on the public highway. The time he spent in going to the "400 area" and returning to his home in Augusta, Georgia, had no part in the amount of his compensation. The automobile in which he rode to work was parked at any place which the owner of the vehicle might choose, and the claimant was free to select any route decided by him to go between the premises of the du Pont Company and the automobile. The way used by the claimant was not the sole and exclusive or only practicable means of ingress and egress, and the public highway of course was not constructed by or maintained by the du Pont Company, but was under the sole control of the South Carolina State Highway Department.
While attempting to cross the Highway No. 50, he was accidentally injured by being struck by an automobile driven by another employee of the du Pont Company.
The "400 area" was enclosed within a fence. When the claimant went out of the clock alley he walked along the eastern right-of-way of the highway through the area described as the parking lot and onto privately owned property over which the employer had no control. The accident occurred about twenty minutes after he had checked out of the gate. The driver of the automobile which ran into him had also knocked off work at 4:30, and was traveling towards his home in Springfield, South Carolina.
The employer had no control over the highway or the land on either side of it where the accident occurred. The land was owned by people of the community, and was exclusively under the control of the owner, and the highway was used by the traveling public.
*220 The employer did not furnish claimant or its other employees with transportation. It did not prescribe the route they were to follow in going to and from work. The employees working in the "400 area" in their discretion parked their cars in the parking lot on both sides of the paved highway and also alongside the dirt road.
In view of this testimony it is my opinion that the case is governed by the decisions of our Supreme Court in the case of Gallman v. Springs Mills, 201 S.C. 257, 22 S.E. (2d) 715, and Hinton v. North Georgia Warehouse Corporation, 211 S.C. 370, 45 S.E. (2d) 591.
In the Gallman case the claimant sustained an accidental injury on a street in a mill village, a short distance before entering the place of his work. It was held that the injury did not arise out of and in the course of his employment.
To the same effect is the Hinton case. Here, the claimant was on a public highway, and was just at the point of making a left turn to enter the premises of the employer when the accident occurred. It was held that he was not entitled to come under the compensation act.
These two cases set forth very clearly that the general rule is that one who is injured on a public highway while going to or returning from his work cannot claim that his injuries arose out of and in the course of employment, but to this rule there are certain exceptions, as follows:
1. Where in going to and returning from work, the means of transportation is provided by the employer, or the time thus consumed is paid for or included in the wages.
2. Where the employee, on his way to or from his work, is still charged with some duty or task in connection with his employment.
3. Where the way used in the sole and exclusive way of ingress and egress, or where the way of ingress and egress is constructed and maintained by the employer, and there *221 is "some inherent danger in the use of such exclusive street or way."
It will readily be seen that the instant case does not fall within any one of these three exceptions.
In the case of Eargle v. South Carolina Electric & Gas Co., 205 S.C. 423, 32 S.E. (2d) 240, 243, the employee could not go to his work by means of a mill dam which belonged to the electric company, because water was flowing over it. Consequently in order to report at a certain hour for emergency duty he crossed the lake in a boat and was drowned. It was held that he was entitled to recover, and a fourth exception was laid down to the general rule that a person going to or from his work is not about his employment. This fourth exception is as follows: "That an injury incurred by a workman in the course of his travel to his place of work and not on the premises of his employer, but in close proximity thereto, is not compensable unless the place of injury was brought within the scope of employment by an express or implied requirement in the contract of employment of its use by the servant in going to and * * * from his work."
Clearly the instant case cannot fall within that exception, because here the claimant was traveling upon a public highway, and there is nothing whatever in this case to show that there was an express or implied requirement in his contract with the du Pont people for the use by the employee in going to his work of this particular public highway.
The case was very carefully studied by Commissioner James J. Reid, who gave a great deal of thought to it and wrote a comprehensive opinion, affirmed by the full Commission. He states that it is a border line case. He points out that while the highway was a public highway, and at the time was being used by the public, the greatest part of the traffic was by automobiles used by the personnel of the du Pont Company, and that the highway is within the general *222 area comprising the Savannah River Project, which eventually will be controlled and managed by the du Pont Company for the government. He also says that there is some testimony that the du Pont Company could have acquired exclusive use of the highway at any time it chose to do so by barring it from public use. I do not thing that these matters affect or control the present case. Although when completed the bomb project will cover many thousands of acres, the question before us must be confined to the situation which existed on this occasion, on July 5, 1951. The able Commissioner states that the du Pont Company did not then have any control over the claimant after his workshift terminated, did not prescribe the route he would take going to and from work nor furnish the transportation to do so. He then said: "This is merely a street accident case occurring immediately after the termination of the employee-claimant's actual work period. However, the case is a little different from the usual street accident case in that the employee-claimant was going across the highway to where the car in which he was riding to and from work was parked and waiting for him, and further, that the traffic was caused mainly by the work activities of the defendant-employer and the particular car that struck the claimant was driven by another employee of the defendant employer working in another area." In my opinion none of these matters brings the case within any of the exceptions set forth above, or removes it from the rule of the Gallman and Hinton decisions, and it may be observed that on the street in front of almost every manufacturing plant the greater amount of traffic at knocking-off time is caused by the employees of the manufacturer.
Attention may be called briefly to two other South Carolina cases, in order to show that the facts are quite different from those here. In Lamb v. Pacolet Manufacturing Co., 210 S.C. 490, 43 S.E. (2d) 353, the claimant was permitted to recover since he was injured on certain steps which *223 were erected by the mill for the primary purpose of providing means of ingress and egress to the employees.
In Bailey v. Santee River Hardwood Co., 205 S.C. 433, 32 S.E. (2d) 365, there was evidence that the workman was traveling in an automobile furnished by the employer.
As a case in which liability was denied a workman, in Dicks v. Brooklyn Cooperage Co., 208 S.C. 139, 37 S.E. (2d) 286, 287, it was said that "Unless the incidents of employment be exceptional, the relation between a master and his servant is suspended when the servant leaves the place of his actual employment at the close of his day's work to go to his home." And in that case the accident occurred after Dicks had finished his work for the day, had left the premises of his employer, and was half a mile away from the plant on his way home from work.
It is my opinion that the judgment and award of the Commission, which affirmed the opinion of Commissioner Reid, will have to be reversed.
It is therefore ordered that the decision and award of the State Industrial Commission be, and the same hereby is, reversed and set aside.
March 4, 1953.
PER CURIAM.
This is a workmen's compensation case and is here on appeal from an order reversing and setting aside an award in favor of appellant made by the Industrial Commission. This well considered order, which clearly and concisely states the facts and issues involved, is, for the reasons therein stated, adopted and will be reported as the opinion of this Court.
We desire to add that notwithstanding the fact that our own decisions fully sustain the conclusion of the Court below, we have carefully considered the cases from other jurisdictions cited in the splendid brief of appellant's counsel, as well as a number found in our own research. It must be conceded that the language and tone of several of them, although *224 presenting somewhat different factual situations, tend to sustain the contention of appellant, but we think the weight of authority elsewhere is to the contrary. Among the cases from other jurisdictions denying compensation under circumstances strikingly similar to those involved in the instant case are the following: Bryan v. T.A. Loving Co. & Associates, 222 N.C. 724, 24 S.E. (2d) 751; Dinsmore's Case, 143 Me. 344, 62 A. (2d) 205; and Treasurer of State of Michigan v. Kaiser-Frazer Corporation, 326 Mich. 715, 40 N.W. (2d) 776.
Affirmed.
BAKER, C.J., and FISHBURNE, STUKES, TAYLOR, and OXNER, JJ., concur.
STUKES, Justice (concurring).
I concur because I do not think that the case can be soundly distinguished from Hinton v. North Georgia Warehouse Corp., 211 S.C. 370, 45 S.E. (2d) 591. I dissented from the decision of the court in that case but, of course, am bound by the authority of it.