The STANDARD FIRE INSURANCE
COMPANY, Appellant,

v.

Lucy G. RODRIGUEZ, Appellee.

No. 16788.

Court of Appeals of Texas,
San Antonio.

Nov. 24, 1982.

Rehearing Denied Jan. 13, 1983.

Joe Meador, Thomas Stevens, San Antonio, for appellant.

Richard Knutson, San Antonio, for appellee.

CADENA, C.J., and CANTU and BASKIN, JJ.

## OPINION

CANTU, Justice.

This is a worker's compensation case. Standard Fire Insurance Company, hereinafter referred to as Standard, appeals an unfavorable jury finding declaring appellee, Lucy G. Rodriguez, totally and permanently incapacitated.[1]

Standard has raised fifteen points of error which can readily be reduced to two basic contentions. The first ten points of error challenge the sufficiency and presence of the evidence to establish that appellee was within the course and scope of her employment at the time of her injuries. The remaining five points of error challenge the sufficiency and presence of the evidence to support the jury's finding that appellee sustained total and permanent incapacity.

Initially we address Standard's challenge to the jury's finding that the injuries sustained were within the course and scope of appellee's employment. Since the jury heard the testimony of the witnesses in conjunction with the exhibits now before us, and since Standard asserts there was no evidence to support the verdict, we shall consider only that evidence, and reasonable inferences therefrom, which viewed in its most favorable light support the jury findings, and reject all evidence or inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965). *In re: Kings Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

Appellee Rodriguez, on June 23, 1976, was employed as a seamstress by the Foree Manufacturing Company, Inc., a business engaged in the manufacture of uniforms. Foree's business is located on the third floor of a building known as the Firestone Building in San Antonio. The entire third floor of the building is leased by Foree from the owners of the building. The remainder is occupied by a concern doing business as Southwest Lighting Company. The Firestone Building is bound on the east side by S. Flores Street, a major thoroughfare, on the south by Graham Alley, on the west by

---

1. This appeal follows a retrial of the matter. *See Rodriguez v. Standard Life Ins. Co.,* 573 S.W.2d 594 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.). The Waco court reversed and remanded the case because 17 pictures introduced at trial were not included in the record on appeal. We now have four (4) pictures of the scene before us, and a diagram which was used in conjunction with the oral testimony, none of which places us in a position substantially superior to the Waco court. The diagram in particular contains notations entered in 3 distinct colors with one point of reference.

an abandoned railroad easement and on the north by a private parking lot. The building includes loading docks on the north and south sides. It also has entrances on the north, west and south sides.

Access to Foree's work area on the third floor of the building is had by entering a door located within the south loading dock area. Appellee and other employees customarily used this entrance to reach the third floor working area. Also, a freight elevator located within the first floor loading dock area reaches Foree's work area on the third floor and is routinely used by Foree employees for shipping and receiving along with the loading dock.[2] There is no evidence that the elevator was ever used by employees of Foree for ingress or egress other than in the course of shipping and receiving. Accordingly, all employees in order to reach the third floor level necessarily entered through the entrance located within the loading dock area adjacent to Graham Alley.

Since Foree did not provide employee parking, employees could gain access to the only entrance by approaching on Flores Street from the north or the south or by being dropped off on Graham Alley. If approaching from the parking lot on the north, access to the building can be gained by using a concrete ramp or walkway forming an extension of the north loading dock and continuing along the west side of the building as a walkway leading to the south loading dock area and thus to the entrance containing the stairways leading to the third floor.

The only entrance to Foree's work area required employees to first enter the loading dock area regardless of the approach the employee took.

The record reflects that some of Foree's employees customarily parked in the private parking lot north of the Firestone building and either walked south on Flores Street or used the loading dock extension towards the entryway.

Foree management had neither prohibited nor designated any particular route of ingress or egress for its employees, but took the simple position that it was responsible for only the area constituting the third floor and ending as of the doorway on the third floor leading to the stairway.

Foree customarily maintained the stairways for the safety of its employees and admitted cleaning them, although it disclaimed any duty or responsibility for their upkeep.

On June 23, 1976, appellee, Lucy G. Rodriguez, during the noon lunch hour, purchased a caladium plant being sold by Foree. Originally, appellee planned to ride a city bus home, but the purchase of the plant required a change of plans. A co-worker offered to give her a ride home and at the end of the work day appellee and her friend punched out, descended the flights of stairs to the loading dock area, walked across the loading dock area towards the parking lot on the north side of the building. While descending the metal stairs attached to the loading dock extension, she lost her balance and fell to the ground, sustaining injuries.

2. The oral testimony, when referring to the diagram speaks in general terms, rather than to fixed points of reference. The record does not disclose which of the loading docks was used by Foree. The following is representative of the testimony relative to the loading dock.

Q. How do you ship your stuff out of there, Mr. Sugarman, how do you ship your products?
A. Well, we ship most of our products by truck.
Q. Do trucks drive up to the third floor of the building to get loaded?
A. No, they drive right up to this dock area right here. They are loaded onto the elevator that comes right down here.

Q. So, the truth of the matter is you also use the dock right there, right, that loading dock?
A. This area from the elevator, which is located right here, to this dock area, is the way we load and unload our merchandise.
Q. But you use it, don't you?
A. We use that area.
  *  *  *  *  *  *
Q. You have, in fact, been using it for all of these years.
A. That's correct.

It is undisputed that the loading dock is not a public sidewalk nor a public thoroughfare. It is also undisputed that at the time appellee sustained her injuries she had punched out from work and was not on any special mission or errand for her employer.

Standard asserts that the premises at which appellee fell were neither owned, used, maintained nor controlled by the employer. While there is no issue of ownership, the use, maintenance and control are in dispute.

As admitted by its vice president, Foree habitually used either the north loading dock area, the south loading dock area, or both on a daily basis, thus it was not unusual for Foree employees to be in the areas now disclaimed as Foree's premises. Additionally, there is evidence that Foree employees were parking on the adjacent private parking lot with the full knowledge of Foree management, if not with their consent. Appellee and another witness both testified that employees parking on the private lot routinely used two approaches to the Foree entrance door. Foree denied having knowledge of the employee practice, but admitted that the practice was never prohibited. This position is totally in keeping with Foree's testimony that it did not concern itself with routes taken by their employees before or after entering or leaving the doorway leading to the plant on the third floor. Foree Vice President Ken Sugarman admitted that appellee had to have been in the building in order for her to reach the place of injury.

Although it is undisputed that there was but a single staircase leading to the third floor, the crucial issue is the location of this staircase in relation to the entire building. If the evidence disclosed that the entryway leading to the staircase originated upon a public sidewalk on Graham Alley, our task would be considerably simpler. But the evidence in this regard, although uncontested in some respects, remains susceptible of various interpretations. Under appellee's version she never left the confines of the building when she undertook to use the loading dock area as a means of reaching

the parking lot. Under Standard's version, appellee came out upon the loading dock area but Standard considers this area as a portion of the public sidewalk on Graham Alley. The exhibits before us support the conclusion that appellee exited into the loading dock area. We must, therefore, decide whether such constituted a departure from the premises or whether appellee remained upon the premises until the injury occurred.

■ It is safe to assume that the loading dock area extending from immediately adjacent to the staircase entrance to the point of injury is not, in the strictest sense, on Foree's premises. Yet we may hold the injury compensable if we are prepared to further hold that such place was in such proximity and relation to employee's premises as to be in practical effect a part of her employer's premises.

Standard places principal reliance upon *Texas Compensation Insurance Co. v. Matthews,* 519 S.W.2d 630 (Tex.1974), as does appellee.

We are directed to the following language found in *Matthews:*

... Cases in which the employer has evidenced an intention that the particular access route or area be used by the employee in going to and from work, and where such access route or area is so closely related to the employer's premises as to be fairly treated as a part of the ̇premises.

The jury was charged by the court at the request of Standard in the following manner:

If an employee is injured at a place where the employer has evidenced an intention that the particular access route or area be used by the employee in going to and from work, and where such access route or area is owned by employer or is so closely related to the employer's premises as to be fairly treated as a part of the premises, the injury is one in the course of her employment.

Special issue 2 inquired, "Was she injured in the course of her employment?" The jury answered, "Yes."

Standard urges the application of a two-part test in order to properly invoke the "access doctrine" and adds the additional requirement that the evidenced intention be an "obvious manner". Standard further would have us limit the rule's application to a particular route with no consideration given to the possible application of "area." The instruction was given as requested by Standard and did not include the qualifications it seeks to place upon the test now. We decline to add or detract from the announced rule.

■ We must begin our examination of the applicable law with the general and well-established rule that the benefits of the workers compensation statute do not apply to injuries received going to and from work. *Dishman v. Texas Employers' Insurance Association,* 440 S.W.2d 727 (Tex.Civ. App.—Ft. Worth 1969, writ ref'd n.r.e.); *Shelton v. Standard Insurance Co.,* 389 S.W.2d 290 (Tex.1965); *Texas General Indemnity Co. v. Bottom,* 365 S.W.2d 350 (Tex.1963); *Viney v. Casualty Reciprocal Exchange,* 82 S.W.2d 1088 (Tex.Civ.App.— Eastland 1935, writ ref'd).

■ An exception to this rule is made in cases which have formed the "access doctrine". When the employer has evidenced an intention that the particular access route or area be used by the employee in going to and from work, and where such access route or area is so closely related to the employer's premises as to be fairly treated as a part of the premises, the general rule does not apply. *Texas Compensation Insurance Co. v. Matthews,* 519 S.W.2d 630 (Tex. 1974); *Kelty v. Travelers Insurance Co.,* 391 S.W.2d 558 (Tex.Civ.App.—Dallas 1965, writ ref'd n.r.e.); *Lumberman's Reciprocal Association v. Behnken,* 112 Tex. 103, 246 S.W. 72 (1922).

■ The "access doctrine" further contemplates that employment include

not only the actual doing of the work, but a reasonable margin of time and space

necessary to be used in passing to and from the place where the work is to be done. If the employee be injured while passing, with the express or implied consent of the employer, to or from his work by a way over the employer's premises, or over those of another in such proximity and relation as to be in practical effect a part of the employer's premises, the injury is one arising out of and in the course of the employment as much as though it had happened while the employee was engaged in his work at the place of its performance. In other words, the employment may begin in point of time before the work is entered upon and in point of space before the place where the work is to be done is reached. *Texas Employers' Insurance Association v. Lee,* 596 S.W.2d 942 (Tex.Civ.App.—Waco 1980, no writ); *Texas Employers' Insurance Association v. Boecker,* 53 S.W.2d 327 (Tex.Civ.App.—Dallas 1932, writ ref'd).

Other jurisdictions have addressed situations very similar to ours under the so called "coming and going" rule. While the "access doctrine" appears to be unique to Texas in name, in application it resembles some variations considered under the "coming and going" doctrine as an exception to the general rule.

The variation applicable to our situation has been described in the following manner.

The general rule is that an injury received by an employee in entering or leaving his place of employment, in a building in which the employer leases or uses a part only, has generally been held to arise out of and in the course of employment, where the means used by the employee to enter or leave the building is the only means of ingress or egress. Anno.—Workmen's Compensation—Entering or Leaving, 49 A.L.R. 424, 441 (1927).

Valid comparisons have been made by our Supreme Court between our "access doctrine"[3] and those applications of the "com-

---

**3.** Citing from Honnold, Workmen's Compensation, Vol. 1, § 122, p. 453; *Judson Mfg. Co. v. Industrial Accident Commission,* 181 Cal. 300, 184 P. 1 (1919); in *Latter's Case,* 238 Mass. 326, 130 N.E. 638 (1921).

ing and going" rule. *See Lumberman's Reciprocal Association v. Behnken,* 112 Tex. 103, 246 S.W. 72 (1922). The court in *Behnken* recognized that by express statutory provision it is not necessary to fix liability that the injury be sustained on the employer's premises. 246 S.W. at 73. The present article 8309 § 1(4) Tex.Rev.Civ. Stat.Ann. (Vernon 1967) makes the same provision.

█ Relying on the reasoning used in other jurisdictions, the court in *Behnken* held, "... The crossing in this case bore so intimate a relation to the lumber company's premises that it can hardly be treated otherwise than as a part of the premises." 246 S.W. at 74. This test was used in *Texas Compensation Insurance Co. v. Matthews, supra,* and applies to the instant case. We hold that appellee although not on the employer's premises, was at or near the place of work and on a means of ingress and egress impliedly permitted and recognized by the employer as being a means of access to the work. Although Foree did not lease the premises where the injury occurred, it had rights in and to the loading docks and the docks were used to further the company's business. No one other than employees of Foree or Southwest Lighting Co., and persons doing business with either or both of them, would have reason to use the loading docks. Thus the risk incurred by appellee was one the public, having no business on or about the employer's or Southwest Lighting's premises, would be subject to.

It matters not that appellee might have approached the employer's premises from other directions. The evidence at trial does not disclose any particular danger inherent in the loading dock area not present at one of the other approaches. Foree recognized for some period of time that some of its employees regularly used the private parking lot. Indeed, Foree Vice President, Ken Sugarman, was acquainted with the various means of transportation used by his employees. The jury was justified in concluding that he acquiesced in the various means of access to and from the plant by his

failure to prohibit certain approaches or to designate authorized approaches.

The fact that the means of access upon which the injury occurred is the only access available to the employees has been persuasive to the courts. *See Lumberman's Reciprocal Association v. Behnken, supra; Viney v. Casualty Reciprocal Exchange, supra; Employer's Liability Assurance Corp. v. Light,* 275 S.W. 685 (Tex.Civ.App.—Austin 1925, error ref'd); *Ross v. Howieson,* 232 N.Y. 604, 134 N.E. 589 (1922) reversing 198 App.Div. 674, 191 N.Y.S. 276 (1921); *Sundines Case,* 218 Mass. 1, 105 N.E. 433 (1914). But it is not an absolute requirement that the injury occur upon the only access to the place of employment, particularly where several are available, none have been prohibited, or none expressly designated as the only authorized approach. *See Utah Apex Mining Co. v. Industrial Commission,* 67 Utah 537, 248 P. 490 (1926) (route not forbidden and routinely used by employees). In *Wheeler's Case,* 131 Me. 91, 159 A. 331 (1932) (recognizing the several approaches test); *Dougherty v. M.M. Bernstein & Son,* 160 Pa.Super. 587, 52 A.2d 370 (1947) (recognizing the several approaches test); *Di Cicco v. Downs Carpet Co.,* 137 Pa.Super. 483, 9 A.2d 183 (1939) (customary usage of several approaches with no prohibition by employer); *Baltimore Car Foundry Co. v. Ruzicka,* 132 Md. 491, 104 A. 167 (1918) (several routes available and routinely used); *Fashion Hosiery Shops v. Workmen's Compensation Appeal Board,* 55 Pa.Cmwlth. 465, 423 A.2d 792 (1980) (several approaches with no requirement that employee use particular approach); in *Latter's Case, supra;* (two approaches available and routinely used constituted authorization by acquiescence); *De Howitt v. Hartford Fire Insurance Co.,* 99 Ga.App. 147, 108 S.E.2d 280 (1959) (two approaches available).

Various cases have upheld a finding of injury within the course and scope of employment based upon reasoning akin to the Texas requirement of "route or area so closely related to the employer's premises as to be fairly treated as a part of the premis-

es." [4] See *Starr Piano Co. v. Industrial Accident Commission,* 181 Cal. 433, 184 P. 860 (1919); *Christian v. Chicago & Illinois Midland Railway Co.,* 342 Ill.App. 656, 97 N.E.2d 576 (1951), *reversed on other grounds,* 412 Ill. 171, 105 N.E.2d 741 (1952); *Black v. Herman,* 297 Pa. 230, 146 A. 550 (1929); *See also* Larson's Workmen's Compensation Law, Vol. I, § 15.41.

Recovery has been denied in cases where the employee has reached a public walkway and then deviated back upon the employer's premises, *Eberle v. Union Dental Co.,* 182 Pa.Super. 519, 128 A.2d 136 (1956) (strayed into area not constituting any type of access route). *Lints v. Delaware Ribbon Manufacturers,* 173 Pa.Super. 540, 98 A.2d 643 (1953); *Hendry v. United Collieries,* 47 Scot.L.Rev. 635 (Ct. of Sess.1910); (used an access route expressly prohibited); *Dulac v. Dumbarton Woolen Mills,* 120 Me. 31, 112 A. 710 (1921); or reached an area clearly a public sidewalk. *Workmen's Compensation Board v. Hentish,* 20 Pa.Cmwlth. 514, 341 A.2d 926 (1975).

■ Whether the injury was received by the employee under circumstances bringing it within the course of employment is usually a question of fact governed and controlled by the particular facts of each case. *Texas Employers' Insurance Association v. Lee,* 596 S.W.2d 942 (Tex.Civ.App.—Waco 1980, no writ); *Texas Employers' Insurance Association v. Anderson,* 125 S.W.2d 674 (Tex.Civ.App.—Dallas 1939, writ ref'd). After considering only the evidence and the inferences based thereon which are favorable to the instructions and the findings, and disregarding the evidence and inferences that are unfavorable, we cannot say that the record is devoid of any evidence that appellee was injured in the course of her employment.

In light of the entire record, we hold that the evidence is factually sufficient to support the jury finding of an injury sustained in the course of appellee's employment. *Bountiful Brick Co., et al. v. Giles,* 276 U.S. 154, 48 S.Ct. 221, 72 L.Ed. 507, 66 A.L.R.

1402 (1928); *Stout v. International Insurance Co.,* 568 S.W.2d 904 (Tex.Civ.App.—Ft. Worth 1978, writ ref'd n.r.e.); *Texas Employers' Insurance Association v. Anderson,* 125 S.W.2d 674 (Tex.Civ.App.—Dallas 1939, writ ref'd); *Texas Employers' Insurance Association v. Boecker,* 53 S.W.2d 327 (Tex. Civ.App.—Dallas 1932, error ref'd).

We now turn to Standard's no evidence and insufficient evidence challenge to the jury's findings that appellee sustained total and permanent incapacity as a result of her injury.

The trial court instructed the jury on total incapacity and on partial incapacity. The instructions were:

Total incapacity does not imply absolute inability to perform any kind of labor, but means that one is disabled from performing the usual tasks of a workman, not merely the usual tasks of any particular trade or occupation, to such an extent that he cannot get and keep employment. Partial incapacity means any degree of incapacity less than total incapacity, whereby a person suffers a reduction in earning capacity. A person cannot have both total and partial incapacity at the same time.

Evidence of appellee's total and permanent incapacity was derived mainly from three sources. Appellee's testimony reveals a work history of some thirty years, with most of those being spent as a seamstress in various garment manufacturing concerns in the San Antonio area. Three of those years were spent working intermittently at nursing homes following an injury sustained while employed as a seamstress at Miller Curtain Company in 1972. One of her employment periods lasted nineteen years under the same employer and terminated only because the company was unable to settle a strike.

Viewing the evidence in a light most favorable to the verdict, appellee's work history, up until the injury at Foree, reveals a conscientious and hard-working employee and the jury could infer that she historically

4. See for example *Texas Emp. Ins. Ass'n. v. Dean,* 604 S.W.2d 346 (Tex.Civ.App.—El Paso 1980, no writ); *Shubert v. Fidelity & Casualty*

*Co. of New York,* 467 S.W.2d 662 (Tex.Civ. App.—Houston [1st Dist.] 1971, writ ref'd n.r. e.).

returned to work as soon as she was able. During appellee's thirty years of employment she never had been fired from a job until two days following her injury at Foree. Her post-injury work history must be viewed in light of Foree's refusal to continue her employment.

Although appellee sought employment with various concerns following her injury, she was unable to obtain employment until some seven months later in January, 1977, when several friends offered her temporary light duty sewing. The work was based upon a contract and terminated within three months. Thereafter appellee was unable to obtain employment until December, 1978, when she went to work for Levi Straus as a seamstress. In July she was forced to quit work because of complications arising out of her injury at Foree. Appellee's final attempt at employment was on a part-time basis at Dona Maria Restaurant as a waitress during the months of November and December, 1979.[5]

Appellee sought the services and received treatments from Dr. Robert Bilderback, an orthopedic surgeon, from the time of the injury until January, 1978, when, as she testified, lack of employment and finances caused her to discontinue the treatments. Appellee then sought and received therapy from the County hospital on a daily basis until July, 1980. Therapy was discontinued because appellee's condition failed to improve. At the time of trial she described a swelling in the neck and shoulder areas, loss of strength in her right arm, constant low back pain, and a deteriorating condition. Although she was willing to obtain permanent employment, she was physically unable to do so.

Appellee's neighbor, Janie Santos, whom appellee had known since 1967, testified that although appellee had always been a hard-working person she was now unable to keep steady employment even though she tried. Santos also described appellee's constant complaint of pain. Santos related instances when she would rub appellee's back at night due to the severe pain.

Appellee was examined, at the request of Standard, by Dr. Coyle Williams, an orthopedic surgeon, on one occasion on December 14, 1979. Dr. Williams concurred with the diagnosis of Dr. Bilderback that appellee was suffering from osteoporosis, a demineralization of the bone caused by loss of calcium. He further testified that osteoporosis causes sensitivity of the muscles and weakening of the bone in the back. According to Dr. Williams, appellee's condition "is sort of an indefinite situation because osteoporosis sort of goes on and on." Dr. Williams, however, did not believe appellee's condition to have arisen as a result of trauma.

Dr. Robert Bilderback's testimony came before the jury in the form of a written deposition with medical history attached. The entire medical file was tendered in evidence by Standard's counsel. The medical history includes references to the injury sustained, diagnosis of osteoporosis and treatment received by appellee as a result of her injury while employed by Miller Curtain Company in 1972. The medical history indicates Dr. Bilderback treated appellee at least 73 times between the period beginning June 25, 1976, and ending January 11, 1978.

Entries by Dr. Bilderback corroborate the identical symptoms described by appellee at trial and further corroborate appellee's testimony regarding therapy treatments on an almost daily basis.

There are also contained in the exhibit two medical narratives prepared by Dr. Bilderback on November 23, 1976, and June 26, 1977. The narrative prepared on November 23, 1976, described basically appellee's symtomatic complaints and related that appellee had improved satisfactorily with therapy. It concluded with the following: "I anticipate no long lasting residuum from the injuries in question and feel she has recovered satisfactorily."

The medical narrative dated June 26, 1977, contained the description of symptoms testified to by appellee at trial and concluded in a manner similar to the earlier narrative:

5. Although the record does not disclose her reason for working only two months, it does

reveal that during this period of time she was undergoing therapy on a daily basis.

This lady had another injury, aggravating the old injury to her back, from which she has recovered satisfactorily with conservative modalities.

\* \* \* \* \* \*

I anticipate no surgical intervention in either of these injuries and anticipate full recovery with no disability in either injury.

On September 7, 1977, Dr. Bilderback described appellee's diagnosis as "contusion mild to moderate sprain right shoulder and ankle" and described appellee's employability as restricted to light work.

While the medical testimony given by the two doctors is not fully in harmony, it is not necessarily in conflict. In essence both doctors agree on the diagnosis and basically on the prognosis. Dr. Williams's testimony regarding osteoporosis is consistent with a permanent condition but denies its origin in trauma. Dr. Bilderback's records confirm the presence of osteoporosis as a result of trauma but do not support a finding of permanent disability. The testimony of the lay witnesses, appellee and her neighbor Janie Santos, both support a finding of permanent and total disability.

■ There seems to be no fixed rule establishing the quantum of evidence by which a claimant is required to prove permanent total disability. The rule seems to be that where it can reasonably be inferred from the evidence that the claimant's injuries are permanent, and totally disable him from performing his usual tasks as a workman in such a way as to enable him to procure and retain employment, a verdict in his favor on the issue of total permanent incapacity will be affirmed. *Trinity Universal Insurance Co. v. Farley*, 408 S.W.2d 776 (Tex.Civ.App.—Tyler 1966, no writ). The duration and extent of disability resulting from an injury is at best an estimate which must be determined by a jury from all the pertinent facts before it. *Angelina Casualty Co. v. Spencer*, 310 S.W.2d 682 (Tex.Civ.App.—Beaumont 1958, writ ref'd n.r.e.).

■ Under the present state of the record there was evidence which would have supported a verdict either way. We, therefore, have no authority to disturb the judgment. The evidence as presented created an option for the jury as trier of the facts to exercise and it was exercised against Standard. *Cf. Texas General Indemnity Co. v. Hancock*, 422 S.W.2d 565 (Tex.Civ. App.—Ft. Worth 1967, no writ); *Trinity Universal Insurance Co. v. Farley*, 408 S.W.2d 776 (Tex.Civ.App.—Tyler 1966, no writ); *Standard Accident Insurance Co. v. Mize*, 378 S.W.2d 686 (Tex.Civ.App.—Amarillo 1964, no writ); *Associated Employer Lloyds v. Self*, 192 S.W.2d 902 (Tex.Civ.App. —Dallas 1946, writ ref'd n.r.e.).

We deem the evidence sufficient to support the jury's findings of permanent total incapacity and reject Standard's contention that they were so contrary to the weight and preponderance of the evidence as to be manifestly wrong and unjust. *Trinity Universal Insurance Co. v. Farley, supra.*

Applying the rules announced by the Supreme Court in *In re: Kings Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951) we reject Standard's no evidence and insufficient evidence challenges.

The judgment of the trial court is affirmed.